IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

In re:                            )
                                  )
    DEBORAH ALICE NEAL        )    No. 05-1297-CV-W-SOW
                                  )
    Debtor.                   )

ORDER

This matter comes before the Court on appeal from an Order entered by the Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri, on December 20, 2005, in *In re* Deborah Alice Neal, Bk. No. 05-43393-JWV. Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, The Kansas City Star (hereinafter "Appellant" or "Star") appeals the Order of the Bankruptcy Court sealing the names of certain creditors in this matter. The issues presented on appeal are:

    1. Whether the Bankruptcy Court erred in determining that the List of Creditors filed by Debtor contained "scandalous matter" which requires that it be protected from public disclosure under 11 U.S.C. § 107(b)(2);

    2. Whether the Bankruptcy Court erred in determining under Federal Rule of Bankruptcy Procedure 9018 that sealing the List of Creditors filed by Debtor is necessary to protect governmental matters that are made confidential by statute or regulation; and

    3. Whether 11 U.S.C. § 107(b)(2) and Bankruptcy Rule 9018, as applied to seal the List of Creditors filed by Debtor pursuant to the December 20, 2005 Order of the Bankruptcy Court, violate the public's right of access to judicial records guaranteed by common law and the First Amendment to the Constitution of the United States.

    Having considered the arguments of the parties, this Court reverses the decision of the

Bankruptcy Court.

## I. Background

Deborah Alice Neal ("Debtor" or "Ms. Neal") served as a Kansas City Municipal Judge from 1996 until she resigned in November 2004. Ms. Neal filed for Chapter 13 bankruptcy on June 22, 2000. Ms. Neal was thrust into the public eye when she was caught in an early morning raid on a Kansas City, Kansas casino in April 2004. It was subsequently revealed that Ms. Neal had a gambling addiction and was suffering from depression.

An investigation led to criminal charges and a plea agreement in which Ms. Neal pled guilty to mail fraud and was sentenced to 28 months imprisonment by the Honorable Howard F. Sachs. In the plea agreement, Ms. Neal acknowledged that she had received loans from attorneys, but maintained that she did not do so for any improper purpose.[1] Specifically, Ms. Neal denied that she engaged in any quid pro quo transactions with attorneys that appeared before her. At the sentencing, Judge Sachs refused to release the names of the attorneys from whom Ms. Neal received loans. Ms. Neal did provide the names of the attorneys she received loans from to the United States Attorney and to the Missouri Office of Chief Disciplinary Counsel ("OCDC"), the arm of the Missouri Supreme Court that investigates disciplinary matters involving attorneys. Currently, the OCDC is conducting an ongoing investigation into the attorneys' conduct. Neither the U.S. Attorney's Office nor the OCDC have released the names of the attorney-creditors ("Unnamed Creditors").

---

[1] There is no ethical rule in the Missouri Supreme Court Rules of Professional Conduct that *per se* prohibits an attorney from loaning money to a judge. See Mo. Sup. Ct. Rule 4. Such loans are prohibited only as to a "party or other person whose interests have come or are likely to come before the judge . . . ." Id. If a loan exceeds $100.00, the judge must report it as income under Canon 4H.

In a bankruptcy filing on May 19, 2005, Ms. Neal petitioned the Bankruptcy Court under section 107 of the Bankruptcy Code to "seal" that portion of the list of her creditors containing the names of attorneys who had lent her money when she was a sitting judge, on the grounds that the information was defamatory and scandalous. By Order dated May 27, 2005, Judge Venters granted the Debtor leave to file the list of Unnamed Creditors under seal. Subsequently, in November of 2005, the Star filed a motion to vacate the May 27, 2005 Order. Following a hearing, Judge Venters issued a Memorandum Opinion denying the Star's motion to vacate the court's May 27, 2005 Order. This appeal followed.

The list of Unnamed Creditors at issue in this case is simply that - a list. The list contains only the names and addresses of the Unnamed Creditors of Ms. Neal, along with the amount she purportedly owes said creditors. While the list might seem fairly innocuous at first glance, the Unnamed Creditors whose names have been filed under seal with the Court vehemently contend that making their names public would scandalize them, specifically that placing the list in the public record would "paint them all with the same brush" and call into question their reputations. The list does not differentiate between attorney-creditors who appeared in front of Judge Neal and those who did not. Presumably the list also fails to identify any attorneys who loaned Ms. Neal money, but were repaid prior to her bankruptcy filing.

The Star, Kansas City's largest newspaper, insists that the public has a right to know the names of the attorneys who loaned money to Ms. Neal, regardless of whether the attorney appeared in front of Ms. Neal or not. The Star has closely followed Ms. Neal's story. As early as August 19, 2004, the Star reported on the loans Ms. Neal received from attorneys, her investigation by the Missouri Judicial Commission, her resignation from the bench, and her

hospitalization for mental care.

At issue in this case is the interpretation of section 107 of the Bankruptcy Code.[2] This section addresses public access to papers filed in a bankruptcy case. Section 107(a) provides a presumption of access unless a paper is determined by the bankruptcy court to contain scandalous or defamatory matter as provided in subsection b. Section 107 provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may -
> > (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
> > (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

For the purposes of this case, the parties have focused on subsection b, specifically whether the list of Unnamed Creditors, which was sealed by the Bankruptcy Court, is considered scandalous or defamatory. The Bankruptcy Court quickly did away with the issue of defamation because "defamatory" means "untrue," and there has been no suggestion that the list of Unnamed Creditors is inaccurate or untrue. The Bankruptcy Court adopted the definition of scandalous material as "statements in a pleading that could cause a reasonable person to negatively alter his or her opinion of the subject's moral character, taking those statements in the context in which they appear." See In re Deborah Alice Neal, Bk. No. 05-43393, pg. 5. The Court accepts this definition of scandalous for purposes of this appeal.

## II. Standard of Review

The parties to this appeal dispute the proper standard of review to be applied by the Court

---

[2]11 U.S.C. § 107.

4

in this case. The district court reviews the bankruptcy court's conclusions of fact for clear error and its legal conclusions de novo. Fed. R. Bankr. P. 8013; *In re* Westpointe, L.P., 241 F.3d 1005, 1007 (8th Cir. 2001). Furthermore, the district court reviews the bankruptcy court's interpretation of the bankruptcy code de novo. *In re* Farmland Industries, Inc., 397 F.3d 647, 650 (8th Cir. 2005). It is the Star's position that the standard of review to be applied is de novo. Conversely, it is the Unnamed Creditors' position that the standard of review to be applied is clearly erroneous. A finding of fact is clearly erroneous when "although there is evidence to support it . . . the reviewing court is left with a firm and definite conviction that a mistake has been committed." Kaelin v. Bassett, 308 F.3d 885, 888-89 (8th Cir. 2002) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).

The proper standard of review to be applied hinges on the central issue of this case: whether a bankruptcy court should consider the context of material in a bankruptcy proceeding when determining whether that material is scandalous or defamatory. The facts of this case present a unique scenario in which a judge accepted loans from certain attorneys and the case law on section 107(b)(2) is sparse. As the Bankruptcy Court recognized, the immediate context of what was filed with the Bankruptcy Court - the debtor's bankruptcy schedules, are innocuous, and the information - that the debtor owes these people money - would ordinarily seem to have nothing to do with their moral character. Yet, the Bankruptcy Court went further and stated that the list was scandalous in a larger context: "If the Court stopped here, however, it would ignore a crucial part of the context in which this information appears, namely, a context that is intrinsically colored by the ethical obligations of judges and attorneys and the idiosyncratic nature of their relationship." *In re* Deborah Alice Neal, Bk. No. 05-43393, pg. 5.

5

To some extent, the Bankruptcy Court's finding that the list of creditors is not scandalous in the context of the debtor's bankruptcy filings (it is just a list of creditors) is a factual finding. However, the Bankruptcy Court went on to construe the statutory language of section 107(b)(2), and the correctness of this finding is a question of law. Even if the issue is deemed to be a mixture of law and fact, the district court, in reviewing the decision of the bankruptcy court, must independently determine mixed questions of law or fact. Accordingly, our review is de novo.

III. Discussion

The primary issue on appeal is whether the Bankruptcy Court erred in considering matters outside of the list of Unnamed Creditors itself in determining that the list was scandalous. These "outside matters" have been discussed in the Bankruptcy Court's opinion, as well as the briefs of the parties, as the "context" in which the material appears. The Court finds that the Bankruptcy Court improperly construed and applied section 107(b)(2) when it considered facts outside of the papers filed in the bankruptcy case. Section 107(b)(2) specifically states that upon motion of a party the bankruptcy court shall protect a person with respect to scandalous or defamatory matter *contained in* a paper filed in a case (emphasis added). If the court determines that the 107(b) exceptions do not apply, "the inquiry is complete and the Court's decision will favor public access." *In re* Phar-Mor, Inc., 191 B.R. 675, 678 (Bankr. N.D. Ohio 1995). *In re* Phar-Mor is the seminal case interpreting section 107.

The statute says nothing about the bankruptcy court examining the "context" in which the material appears in order to determine whether the material is defamatory or scandalous. Rather, the crucial determination is whether scandalous or defamatory material is contained in the papers filed with the bankruptcy court, not whether the material in the papers can be construed as

6

defamatory or scandalous once additional facts outside of the record itself are considered, such as the fact that the debtor is a former judge and some of her creditors are attorneys who may or may not have appeared in front of her after loaning her money. In contrast, in the Phar-Mor case, the bankruptcy court afforded protection because the complaint itself made numerous allegations of wrongdoing. 191 B.R. at 677.

Furthermore, there is a long-standing presumption of public access to judicial records. Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). "Although there is virtually no legislative history for § 107, the plain language of § 107(a) evinces a clear congressional intent that papers filed in bankruptcy cases be available to the public." *In re* Gitto Global Corp., 422 F.3d 1, 8 (1st Cir. 2005).

As mentioned above, the case law on whether the bankruptcy court should consider the context of the material filed in a bankruptcy case is sparse. In Phar-Mor, the court determined that a court sitting in equity is given broad discretion in determining if material falls within the scandalous or defamatory exceptions and in determining the type of protective remedy. Id. at 679. The Court finds that the Unnamed Creditors' reliance on Phar-Mor is misplaced. The Unnamed Creditors assert that Judge Venters had broad discretion to examine the larger context of this case in order to determine whether the list was scandalous or not. Phar-Mor was undeniably different from this case in that the allegedly defamatory or scandalous information in Phar-Mor was contained in the complaint itself. Phar-Mor did not address whether a bankruptcy judge has discretion to consider whether the information was scandalous or defamatory by examining allegations that were not contained in the papers before the Court. Likewise, in Gitto, the Court recognized that if a court sealed *any* material tending to harm a person's reputation

7

qualified under the exception, this would significantly curtail the public's access to these records. *In re* Gitto, 422 F.3d at 9 (emphasis added).

While it might be true in this case that unsealing the list of Unnamed Creditors might tend to harm an attorney's reputation, it is not appropriate for the bankruptcy court to consider facts and allegations that are not before the bankruptcy court. Surely this could not have been the intention of Congress when the Bankruptcy Code was drafted. It is telling that Congress made sure to afford protection to those whose reputation would be harmed by what was actually filed in the pleadings and before the court. It would seem impossible for the bankruptcy courts, with their ever expanding caseloads to shield all creditors from potential embarrassment by sorting through the allegations that are extrinsic to the bankruptcy proceedings initiated by the debtor.

In this case, the list of Unnamed Creditors that was filed with the Bankruptcy Court contains no scandalous facts or allegations or any reference such that it would cause a reasonable person to negatively alter his or her opinion of a creditor's moral character. Further investigation would be required to determine if there was anything improper about the loans at issue. It is this fact that convinces the Court that there is nothing scandalous about the list of Unnamed Creditors itself. Accordingly, none of the section 107(b) exceptions apply, the list should not have been sealed.

Next, Appellant Star argues that the Bankruptcy Court erred in determining under Federal Rule of Bankruptcy Procedure 9018 that sealing the List of Creditors filed by Debtor Neal is necessary to protect governmental matters that are made confidential by statute or regulation. Our standard of review is abuse of discretion. Rule 9018 places the decision to seal records within the discretion of the Bankruptcy Court. Fed. R. Bankr. P. 9018 ("[T]he court may make

8

Case 4:05-cv-01297-SOW   Document 15   Filed 03/02/06   Page 8 of 10

any order which justice requires . . . "). Matters committed to the bankruptcy court's discretion are reviewed for an abuse of discretion. *In re* Farmland Industries, 397 F.3d at 650-51. The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous. Id. at 651.

Under Rule 9018, the bankruptcy court has authority to issue an order, *sua sponte*, "to protect governmental matters that are made confidential by statute or regulation." Fed. R. Bankr. P. 9018(3). The "governmental matters" the Unnamed Creditors are referring to are investigations that are being conducted by the OCDC. Missouri Supreme Court Rules 5.31(b)[3] and 5.315(a)[4] require that matters being investigated by the OCDC be kept confidential until discipline is found to be warranted.

The Court finds that the Unnamed Creditors' argument on this point is without merit and that the Bankruptcy Court abused its discretion in determining that it had the authority to issue an order sealing the list of Unnamed Creditors to protect the confidentiality of the ongoing OCDC investigations of the Unnamed Creditors. The Bankruptcy Court improperly applied Rule 9018(3). Rules 5.31 and 5.315 only make confidential the names of attorneys who are under disciplinary investigation to the extent those names appear in the "record of proceedings" or

---

[3]5.31 Records of Investigations and Formal Proceedings
(b) The records of all proceedings occurring prior to the acceptance of a written letter of admonition or the filing in this Court of a decision of a disciplinary hearing panel finding a violation of Rule 4 or of an information directly in this Court shall not be made public unless ordered by this Court or the lawyer shall so request.

[4]5.315 Immunity and Privileges
(a) Communications submitted to the advisory committee, chief disciplinary counsel, regional disciplinary committees, disciplinary hearing panels, or the staffs of any of these entities relating to lawyer misconduct or disability are absolutely privileged if submitted in good faith. No lawsuit predicated on such communications may be instituted.

9

communications with disciplinary authorities.  The rules say nothing about records or communications submitted in another proceeding.

Finally, Appellant Star argues that 11 U.S.C. § 107(b)(2) and Bankruptcy Rule 9018, as applied to the seal the list of Unnamed Creditors, violate the public's right of access to judicial records guaranteed by the common law and the First Amendment to the Constitution of the United States.  Given the Court's findings above, the Court does not need to reach this issue.

IV. Conclusion

Therefore, for the reasons stated above, the Memorandum Opinion of the Bankruptcy Court is reversed and the Order sealing the list of Unnamed Creditors is vacated.

Accordingly, it is hereby

ORDERED that the judgment of the Bankruptcy Court is reversed and the Order sealing the list of Unnamed Creditors is vacated.  It is further

ORDERED that the list of Unnamed Creditors shall remain sealed until the time for filing a Notice of Appeal has expired.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 3-2-06